STEVEN M. TINDALL (SBN 187862)
stindall@rhdtlaw.com
VALERIE BRENDER (SBN 298224)
vbrender@rhdtlaw.com
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANASTASIO GARCIA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONY PICTURES ENTERTAINMENT, INC., a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

1. Plaintiff Anastasio Garcia Rodriguez ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure against Sony Pictures Entertainment, Inc. ("Sony" or "Defendant").

## I.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this putative nationwide class action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000.00, there are more than 100 putative class members, and Plaintiff and Defendant are citizens of different states.

3. Venue in this Court and in this District is proper under 28 U.S.C. § 1391(d) because Sony is headquartered in Los Angeles County, it conducts substantial business in Los Angeles County, and the harm in this action arose, in part, in Los Angeles County.

4. This Court has personal jurisdiction over Defendant because it is headquartered and conducts substantial business in Los Angeles County.

## II.   INTRODUCTION

5. On or around November 24, 2014, hackers self-described as the "Guardians of Peace" (GOP) announced that they had breached Sony's network and possessed internal data that they were planning to publicize. As part of this data breach, thousands of current and former Sony employees have had their personally identifiable information (PII), including social security numbers, names, birthdates, passport information, and medical information, published on internet file sharing websites.

6. Defendant failed to adequately secure the sensitive data belonging to Plaintiff and similarly situated current and former employees and their families ("Class Members"). In recent years, Defendant has been the target of several large, successful hacking attempts that experts deemed preventable had adequate security protections and protocol been in place. Defendant was also informed multiple times

by external auditors of its deficient security systems. Despite these warnings, Defendant negligently failed to take steps to adequately protect Plaintiff and Class Members' PII.

### III. PARTIES

**A. Plaintiff**

7. Plaintiff Anastasio Garcia Rodriguez is currently a resident of Pennsylvania. Plaintiff worked for Sony from approximately February of 2011 until May of 2013 as a software engineer at Sony's Culver City, California, offices. Sony has informed Plaintiff that his PII may have been compromised as a result of the security breach, and Plaintiff has confirmed that the PII obtained by the GOP and distributed on the internet includes at minimum his social security number, immigration information and visa, and passport information.

**B. Defendant**

8. Defendant Sony Pictures Entertainment, Inc., is a Delaware corporation with its principal place of business in Culver City, California.

### IV. STATEMENT OF FACTS

**A. The Sony data breach compromised the personally identifiable information (PII) of thousands of current and former Sony employees**

9. On or about November 24, 2014, hackers identifying themselves as the Guardians of Peace ("GOP") appeared on Sony's computer networks and threatened to release "internal data" if the group's demands were not "obeyed."

10. In December of 2014, reports surfaced that unreleased Sony films appeared online on file sharing websites. Shortly after the films were released, the PII of thousands of current and former Sony employees was published online.

11. The PII that was released included social security numbers, names, birthdates, addresses, passport and visa information, salary information, private medical documents and information, and other sensitive information. Experts reported an estimated 25 gigabytes of sensitive data was stolen and released. Some

news media outlets have reported that the GOP hackers stole up to 100 terabytes of data, much of which has not been published online.

12. Employees' stolen PII was published on the internet and made widely available through file sharing websites. Identity Finder LLC, a global security firm that specializes in data loss and identity theft prevention, used its software to run analytics on the Sony data leak. It found that 600 files (including Acrobat PDFs, Excel spreadsheets, and Word documents) contained more than 47,000 unique social security numbers that were referenced over 1.1 million times in the files identified. It also found that many of the social security numbers were accompanied with other PII, such as "full names, date of birth, and home addresses," permitting criminals to easily access the core data needed to commit identity theft and fraud.

13. On December 19, 2014, the U.S. Federal Bureau of Investigation (FBI) announced in a press release that North Korea was behind the GOP hacking attack. However, the identities of the GOP and any other hacking groups affiliated with the Sony data breach remain unknown.

14. Sony knew or should have known that it was failing to take the necessary steps to secure its current and former employees' PII. As a result of its actions and inaction, current and former employees and their families will have to monitor their data for years to come and have been potentially exposed to a lifetime of heightened risk of identity theft and fraud.

**B. Sony knowingly and negligently failed to provide sufficient data protections for current and former employees' PII**

15. Sony's recent history with negative audits and data breaches underscore that Sony knew or should have known that its security protections and protocol for sensitive information were woefully inadequate.

16. In April of 2007, CIO Magazine, a publication that caters to Chief Information Officers and other information technology leaders, published an article revealing that the then-executive director of information security, Jason Spaltro, had

been told by an external auditor that Sony had insufficiently strong access controls and that passwords used by Sony employees did not meet best practice standards. In the same interview, Spaltro stated that the company engaged cost-benefit analyses in determining how to protect data. He stated that in a scenario where notifying customers of a breach of data would cost $1 million, while updating and securing a system to prevent the breach would cost $10 million, he would "not invest $10 million to avoid a possible $1 million loss." A privacy expert also interviewed called this reasoning "shortsighted," since it did not take into account damage to Sony's brand or possible fines from the U.S. Federal Trade Commission if the company was deemed negligent in its protection of sensitive information.

17. In April of 2011, hackers stole the personal information from over 77 million Sony PlayStation accounts. Sony admitted that it had not encrypted user account information, which included usernames, passwords, birthdates, and other personal information as well as some credit card information. Some users' account information was discovered online later that year. The United Kingdom's Information Commissioner's Office (ICO) fined Sony £250,000 (US$395,775) for violating UK data laws and stated that the breach "could have been prevented" had proper security precautions been taken.

18. In June of 2011, another hacking group called LulzSec claimed responsibility for obtaining over a million Sony customer passwords. The information stolen by hackers was reportedly not encrypted and included passwords, email addresses, phone numbers, and dates of birth.

19. According to media reports, a security audit performed by PricewaterhouseCoopers months before GOP hackers breached Sony's system detailed serious gaps in Sony's monitoring of data systems, which made Sony's systems susceptible to security breaches.

20. Sony has repeatedly failed to adequately secure the sensitive data entrusted to the company despite multiple warnings from independent auditors and experts and repeated data breaches of personal information.

**C. Current and former Sony employees were harmed by Sony's actions and inaction**

21. The Sony data breach exposed the social security numbers, names, birthdates, addresses, passport and visa information, salary information, private medical documents and information, and other sensitive information of thousands of current and former Sony employees. Since the GOP hackers claim that they have not released all the information seized, the full scope of the breach is still unknown.

22. This breach of extremely sensitive PII will require multiple forms of identity theft protection and prevention for years to come. Sony's offer of a year of AllClear ID monitoring is entirely inadequate to address the scope of the breach.

23. Experts report that with the type of PII released in the Sony data breach, fraudsters can apply for credit cards and mortgages, accumulate debt, file fraudulent tax returns, illicitly collect government benefits, apply for jobs and rental apartments, secure fake forms of identification, and even be arrested and jailed under someone else's identity.

24. Unlike with credit card theft, social security numbers cannot be easily cancelled or changed. The Social Security Administration will not consider requests for a new social security number when an individual's social security number has been stolen, but there is no evidence that someone else is using the number. Furthermore, even if the number is replaced, credit card companies, the IRS, and private businesses will still have records of the old number linked to an individual's name.

25. Because of the serious consequences of theft of the PII released in the Sony data breach, employees will need to monitor their credit and personal accounts and information for many years. Sony's paltry one-year offer of free credit

monitoring is entirely insufficient to compensate Plaintiff and Class Members for the monitoring that they will need to undertake for years to come.

## V. CLASS ACTION ALLEGATIONS

26. Plaintiff brings all claims alleged herein as class action on behalf of, and seeks to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, the class comprised of all current and former Sony employees and their families whose PII was compromised and disclosed to any third party as a result of the GOP security breach.

27. The class claims herein have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representative are typical of the claims of the class; and (4) the proposed class representative and his counsel will fairly and adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

28. <u>Ascertainability and Numerosity</u>: The Class Members as defined herein are so numerous that joinder would be impracticable. Upon information and belief, reports estimate that over 47,000 current and former employees' PII has been compromised as a result of the Sony data breach. The names and addresses of the Class Members should be identifiable and available to Defendant. Notice can be provided to the Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

29. <u>Commonality and Predominance of Common Questions</u>: There are questions of law and fact common to Plaintiff and Class Members that predominate

over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to: whether Sony had a legal duty of care to Plaintiff and the proposed Class; whether Sony satisfied that duty of care; and whether Sony's act and omissions give rise to a claim of negligence.

30. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other Class Members. Defendant's common course of unlawful conduct has caused Plaintiff and Class Members to sustain the same or similar injuries and damages caused by the same common policies, practices, and decisions of Defendant. Plaintiff's claims are thereby representative of and co-extensive with the claims of the other Class Members.

31. <u>Adequacy of Representation</u>: Plaintiff is a member of the Rule 23 Class defined herein, does not have any conflicts of interest with other Class Members, and will prosecute the case vigorously on behalf of the class. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained attorneys who are competent and experienced in litigating large class actions.

32. <u>Superiority</u>: The expense and burden of individual litigation by each class member makes or make it impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

## VI. CAUSES OF ACTION
## COUNT ONE: NEGLIGENCE

33. Plaintiff realleges and incorporates each and every allegation of this Complaint as if fully set forth herein.

34. Defendant owed a legal duty to Plaintiff and Class Members to exercise reasonable care in obtaining, maintaining, securing, and disposing of PII. This duty included: (a) designing, implementing, maintaining, and testing Defendant's data security systems to ensure that they were adequate to timely identify and prevent a breach by unauthorized persons; (b) securely and completely disposing of PII that was no longer needed by Defendant; and (c) timely acting upon warnings and indications that its current systems were inadequate to protect PII from unauthorized release.

35. Defendant's duty included an obligation to maintain data security consistent with industry standards and best practices. The nature of the technology available to hackers, and the speed at which changes in that technology occur, required Defendant to maintain industry-standard vigilance in updating its protection and detection defenses.

36. Defendant breached its duties owed to Plaintiff and Class Members (a) by failing to exercise reasonable care in the adoption, implementation, and maintenance of IT security procedures, infrastructure, personnel, and protocols; (b) by failing to securely dispose of PII that Defendant no longer required; (c) by failing to utilize industry standard methods for timely identifying security breaches; (d) by failing to timely act on information suggesting that its IT security was inadequate/had been breached; and (e) by failing to timely notify Plaintiff and Class Members of the GOP data breach.

37. Plaintiff and Class Members were foreseeable and probable victims of the GOP data breach.

38. Defendant's breach of its legal duty to Plaintiff and Class Members caused injuries to Plaintiff and Class Members, including, but not limited to: (a) theft of their PII; (b) expenses associated with the detection and prevention of identity theft and unauthorized use of their personal, financial and medical records; (c) expenses associated with time spent addressing and attempting to mitigate the consequences of the GOP data breach; and (d) injury resulting from fraud and identity theft caused by the use of PII by criminals or others who access PII now available on the internet.

39. But for Defendant's negligent and wrongful breach of its legal duty to Plaintiff and Class Members, Plaintiff and the Class would not have been harmed.

40. Plaintiff and Class Members seek an award of actual damages for the injuries caused by Defendant.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the above-described Class of similarly situated, requests relief as follows:

A. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

B. Appointment of Plaintiff and Plaintiff's counsel to represent the Class pursuant to Fed. R. Civ. P. 23(g);

C. A finding that Sony breached its legal duty to Plaintiff and the Class;

D. An award of damages to Plaintiff and the Class for the harm caused by Defendant;

E. An award of costs;

F. Additional legal or equitable relief as this Court may find just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial of his claims by jury to the extent authorized by law.

DATED:  January 2, 2015                    RUKIN HYLAND DORIA & TINDALL LLP


By: */s/ Steven M. Tindall*
STEVEN M. TINDALL
Attorney for Plaintiff